Mahmoud **FUSTOK**, Plaintiff,

v.

**BANQUE POPULAIRE SUISSE** (also known as Swiss Volksbank), **Advicorp Advisory and Financial Corporation, S.A., Alain Brussard, Michel Blattmann, Roger Guex, Pierre-Alain Hirschi, Jean-Jacques Bally, Antoine Asfour and Paul Bisoffi,** Defendants.

No. 81 Civ. 4139.

United States District Court,
S. D. New York.

Sept. 8, 1982.

drawing more refined than that required in a federal civil rights action. *See Hall* at 613 (quoted in text at 505).

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for plaintiff; Herbert Stoller, Eliot Lauer, Lorraine C. Parker, New York City, of counsel.

Arnold & Porter, Washington, D.C., Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendant Banque Populaire Suisse; Brooksley E. Landau, Washington, D.C., Robert E. Gerber, New York City, of counsel.

Layton & Sherman, New York City, for defendants Alain Brussard, Michel Blattmann and Roger Guex; Daniel J. Brooks, Fredrick E. Sherman, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, Mahmoud Fustok, a citizen of Saudi Arabia and a resident of London, England, commenced this action against other foreign citizens and nonresidents charging them with having defrauded him of $250,000,000 in connection with transactions in the trading of silver futures contracts and deliveries of physical silver. The defendants against whom the charge is leveled are: Banque Populaire Suisse ("Banque"), a Swiss banking corporation; three officers and employees of Banque, Alain Brussard, Michel Blattmann and Roger Guex; Advicorp Advisory and Financial Corporation, S.A. ("Advicorp"), a Swiss financial management company; and four officers of Advicorp, Pierre-Alain Hirschi, Jean-Jacques Bally, Antoine Asfour and Paul Bisoffi.

Banque moves to dismiss the complaint on the ground of *forum non conveniens.* The individual defendants, Brussard, Blattmann and Guex make a similar motion.[1] The other defendants either have not been served or have not appeared.

Banque has its head office in Berne, Switzerland with branch offices in Geneva and other Swiss cities. It maintains no branches or offices anywhere in the United States nor is it registered to do business anywhere in the United States. Brussard,

---

1. The defendants also move to dismiss the complaint for: (1) lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1); (2) lack of in personam jurisdiction under Rule 12(b)(2); (3) insufficiency of service of process under Rule 12(b)(5); and (4) failure to state a claim pursuant to Rule 12(b)(6) and Rule 9(b). Consideration of these motions was deferred pending determination of the instant motion.

Blattmann and Guex are citizens of Switzerland and residents of Geneva. Advicorp's only office is in Geneva; its officers Hirschi and Bally are citizens of Switzerland and residents of Geneva; Bisoffi is a resident of France; and Asfour is a citizen of Lebanon and, apparently, a resident of England.

Advicorp was organized early in 1978, at which time Fustok authorized Asfour to represent him in its formation and to subscribe for shares in the new company. Asfour was elected a director of Advicorp. Shortly after Advicorp's organization in April, 1978, Fustok opened an account at Banque with a deposit of $2,000,000 and authorized Asfour to instruct Banque with respect to investments on his behalf. In June, 1978, Fustok also authorized Advicorp to manage, on a discretionary basis, his deposits at Banque and to make investments. Until the middle of 1979, investments made on behalf of Fustok were of a non-speculative nature, mainly in the purchase and sale of securities. In August, 1979, Fustok extended the authorization to Advicorp specifically to include silver futures contracts transactions and deposited additional funds for that purpose with Banque. In connection with Fustok's silver futures trading activities, Banque extended a $45,000,000 line of credit to secure which Fustok pledged certain of his Swiss assets. On instruction from Advicorp and Asfour, Banque invested Fustok's funds in silver futures contracts and the purchase of physical silver. Banque carried out the transactions on behalf of Fustok and other Banque customers through "omnibus" accounts held in the sole name of Banque, using the European offices of American commodity brokers, Merrill Lynch, Pierce, Fenner & Smith, Incorporated, Conti Commodity Services, Inc. and ACLI International Commodity Services, Inc. The purchases and sales occurred in New York and Chicago both on and off the Commodity Exchange, Inc. ("Comex") and the Chicago Board of Trade.

Fustok charges that the defendants engaged in a scheme to defraud him and other customers of Banque in violation of the Commodity Exchange Act by executing silver transactions through its omnibus accounts maintained with various brokers. The complaint alleges, among other matters, that the defendants implemented their fraudulent scheme in that

[Banque] did not immediately enter such transactions on its books and records as transactions for the account of specific [Banque] customers. Subsequently, after a lapse of time which permitted defendants to evaluate whether such transactions were likely to be profitable or unprofitable, defendants caused [Banque] to assign unprofitable transactions to customers of [Banque] and to assign profitable transactions to accounts maintained with [Banque] under code names but which, on information and belief, were accounts maintained for the benefit of one or more of the defendants and persons acting in concert with them. Sometimes, even after transactions were assigned to specific accounts on the books and records of [Banque], transactions which subsequently became profitable were retroactively reassigned from customers of [Banque] to the aforementioned code name accounts, and transactions which subsequently became unprofitable were retroactively reassigned from code name accounts to customers of [Banque].[2]

---

2. Complaint at ¶ 26(a). The complaint further alleges that the defendants committed the following acts, among others, in furtherance of their scheme to defraud:

(a) The fictitious "purchase" on January 21, 1980 by [Banque] for the account of [Banque] customers of 200 Comex silver futures contracts at a price of $49.00 per ounce, when the actual value of such contracts was several millions of dollars less than the fictitious price.

(b) The fictitious "liquidation" on January 3, 1980 by [Banque] for the account of plaintiff of 350 Comex silver futures contracts at prices of $31.05 and $31.48 per ounce, when the actual value of such contracts was almost $17 million greater than the fictitious liquidating prices.

(c) The fictitious "purchase" by [Banque] for the account of plaintiff of 1,772,731.38 ounces of physical silver at a price of $53,-

The gravamen of all claims, no matter how variously stated, is the switching of transactions by the use of the omnibus accounts whereby unprofitable transactions were assigned to plaintiff or other customers of Banque and profitable transactions transferred to the defendants or their associates.

Against the foregoing background, we consider the motions to dismiss on the ground of *forum non conveniens.* In *Gulf Oil Corporation v. Gilbert*[3] and its companion case, *Koster v. Lumbermen's Mutual Casualty Company,*[4] the Supreme Court set forth a balancing test for resolving motions to dismiss on the basis of *forum non conveniens.* While the Court noted that a plaintiff's choice of forum should rarely be disturbed, it also stated that when an alternative forum has jurisdiction to hear a case and when trial in the chosen forum would "establish ... oppressiveness and vexation to a defendant out of all proportion to the plaintiff's convenience," or when the "chosen forum [i]s inappropriate because of considerations affecting the court's own administrative and legal problems," the court may, in the exercise of its sound discretion, dismiss the case.[5]

 To guide trial court discretion, the Supreme Court provided a list of "private interest" factors affecting the convenience of the litigants, and a list of "public interest" factors affecting the convenience of the forum. The private interest factors include the location of evidence and witnesses, the availability of process to compel attendance of unwilling witnesses, as well as other practical problems that make trial of a case easy, expeditious, and inexpensive. The public interest factors include the difficulty which arises when a forum must apply foreign choice of law rules and foreign law, the administrative problems which follow when litigation is added to existing heavy case loads in congested centers rather than being handled at its origin, and the imposition of jury duty upon a community which has no relation to the litigation.[6] In this case, both the private and the public interest factors overwhelmingly point toward dismissal.

At the threshold of analysis is the fact that not only is an alternative forum available, but there is presently pending an action in the courts of Geneva which encompasses the major claims that plaintiff asserts in this action. Fustok's principal claim centers about transactions involving an exchange of 350 silver futures contracts for approximately 1,772,000 ounces of physical silver.[7] On July 3, 1981, three days before plaintiff instituted this action,[8] Banque

---

493,420.83, which silver had a value of at least $30 million less than the fictitious price.

(d) The retroactive reassignment by [Banque] to or for the benefit of the defendants of a purchase of twenty-five Comex silver futures contracts which had originally been purchased by [Banque] for the account of the plaintiff and which were sold at a profit of over $900,000.

(e) The conversion by the defendants of 201,948.71 ounces of physical silver which [Banque] purchased from Conti with the plaintiff's funds.

Complaint at ¶ 27.

3. 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

4. 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947).

5. *Koster v. Lumbermen's Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 831, 91 L.Ed. 1067 (1947). *See also Alcoa Steamship Co., Inc. v. M/V Nordic Regent,* 654 F.2d 147, 151 (2d Cir. 1981) (*en banc*); *Schertenlieb v. Traum,* 589 F.2d 1156, 1165 (2d Cir. 1978); *Rodriguez v. Orion Schiffahrts-Gesellschaft Reith & Co.,* 348 F.Supp. 777, 779 (S.D.N.Y.1972); *Iberian Tankers Co. v. Terminales Maracaibo C.A.,* 322 F.Supp. 73, 75 (S.D.N.Y.1971); *Noto v. Cia Secula di Armanento,* 310 F.Supp. 639, 647–48 (S.D.N.Y.1970).

6. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

7. Plaintiff's counsel states "by far the most significant irregular transaction or series of transactions identified to date was the purported purchase for plaintiff's account in January 1980 of approximately 1,772,000 ounces of physical silver in so-called 'exchange-for-physical' transactions involving the sale of 200 March Comex silver futures contracts and 150 May Comex silver futures contracts." Plaintiff's Brief in Opposition to Motion at 23.

8. Plaintiff contends that Banque "jumped the gun" by filing its action in Geneva since it had been given advance notice of plaintiff's intent to file this action.

commenced an action in the Geneva courts seeking recovery of $52,983,752, claiming that this amount was the negative balance in Fustok's account over and above the value of collateral deposited by him under the pledge agreement. Banque's complaint in the Geneva action traces the history of the relationship between it and Fustok and transactions with Advicorp, including the very items referred to above that are at the core of Fustok's suit here. There can be no serious dispute that Banque's action encompasses Fustok's claims in this action.[9]

■ Simultaneously with the filing of its action, Banque applied for and obtained an attachment of Fustok's assets sufficient to satisfy the unsecured balance claimed to be due from him. It posted in the Geneva court, as directed, a guarantee of 4,500,000 Swiss francs. The attachment was executed against assets of Fustok held by various Geneva and Zurich banks. Fustok has the right to assert any counterclaim he may have, which obviously extends to all claims asserted in this action. Fustok appeared in the action by an attorney who opposed the attachment; an attorney also represented him in a conciliation proceeding as required by Swiss law. His lawyer stated that because of the large amount involved there was no prospect of settlement and the conciliation judge authorized that the lawsuit proceed. Any judgment rendered by the Swiss court against Fustok could be satisfied by his attached assets, or if he prevails upon any counterclaim by execution against the Banque's vast assets in Switzerland. In addition, the Swiss court has the power to compel the attendance of witnesses who are resident in Switzerland.[10] Since a full determination of all issues upon which plaintiff seeks recovery in this action can be resolved by the Geneva court and any judgment satisfied by property available there,

this factor by itself weighs very heavily in favor of dismissal.

■ In addition, other compelling factors counsel dismissal of this action in the exercise of sound discretion. All the parties and the material witnesses in this case are foreign. All Banque's officers and employees, including those named as individual defendants, live and work in Geneva. Similarly, of the Advicorp directors, officers and employees who are named as defendants, Hirschi and Bally live and work in Switzerland; Bisoffi is a resident of France; and the fourth, Asfour, lives in England. Further, potential third-party witnesses such as Banque's independent accountants, employees other than those named here as defendants, and Fustok's advisers also live in Switzerland or London, England and are beyond the subpoena process of this Court.[11] In addition to the expense and inconvenience of travel for these witnesses, if that were contemplated, many of them do not speak English as a primary language which would present an added obstacle to a smooth flowing trial in this District.

To overcome the compelling force of the witness factor, plaintiff lists a variety of New York witnesses, such as employees of the New York brokers and Comex officials, whose testimony, he argues, is necessary to prove various aspects of the defendants' fraud. But not one of the transactions executed in the United States commodities markets is disputed. The fraud charged is not the sale or purchase of futures; it is the so-called switching of the transactions after they became fact. None of these witnesses possesses knowledge of the crucial factual issues in this case—namely, how Banque, among other means, by the use of code name accounts or the retroactive reassignment of transactions, defrauded Fustok and

**9.** Plaintiff's counsel noted "[T]he complaint filed by [Banque] in Switzerland is based substantially on CFTC regulations and Comex rules regarding exchange for physicals, position and price movement limits." Plaintiff's Brief in Opposition to Motion at 57.

**10.** The availability of compulsory process in an alternative forum is a factor favoring dismissal.

See *Schertenlieb v. Traum*, 589 F.2d 1156, 1165 (2d Cir. 1978).

**11.** The location of witnesses is always a key issue in a *forum non conveniens* inquiry. *See, e.g., Schertenlieb v. Traum*, 589 F.2d 1156, 1165 (2d Cir. 1978); *Noto v. Cia Secula di Armanento*, 310 F.Supp. 639, 648 (S.D.N.Y.1970).

other customers. The New York witnesses can testify only as to how undisputed trades were executed. These matters, if pertinent at all, are not even of secondary significance;[12] they are subordinate to the basic issue central to plaintiff's claims. There is no dispute the orders were executed in Banque's name through the omnibus accounts; the dispute is as to how the allocations were thereafter made of the executed orders whereby plaintiff claims he was mulcted of millions of dollars in profits. If, as plaintiff alleges, the fraudulent scheme was the switching of transactions previously consummated, this occurred in Geneva at Banque and Advicorp. Those who performed the fraudulent acts and issued directions in furtherance thereof did so there; the shift of profitable and unprofitable transactions from omnibus accounts were entered on the books and documents maintained in Geneva. A significant fact which emphasizes that Switzerland, particularly the Canton of Geneva, is the central location of all material witnesses and documents is the claim by Fustok that his accountants and other representatives unearthed the alleged fraudulent scheme after examining in Geneva records and documents of Banque and Advicorp. The simple fact that will not down is that if, as plaintiff alleges, a fraud was perpetrated by switching transactions to the detriment of plaintiff and to the benefit of the defendants, the actors who perpetrated the fraud did so in Geneva. When fraud charges are made, it is desirable that the factfinder have the benefit of demeanor testimony of witnesses who would be available in Geneva and not in the United States.[13]

Apart from the availability of material witnesses in Geneva, the pertinent documentary evidence is also located there. All bookkeeping records of Banque involving the silver transactions are in Geneva or elsewhere in Switzerland. So, too, are the Advicorp accounting documents regarding the transactions, minutes of Advicorp meetings, and correspondence between Advicorp and Banque. Many of the relevant documents are in French, Italian or German and would have to be translated.[14]

■ As with witnesses, plaintiff also argues that crucial documentary evidence is in New York—such as account documents maintained by the New York brokers. Again, it is difficult to understand why records of undisputed Comex transactions are more crucial to a showing of fraud than are Advicorp and Banque documents in which hard evidence of the fraudulent scheme exists, if it exists at all. Moreover, as plaintiff himself admits,

> literally all documents . . . [that relate to the silver transactions executed through New York brokers and on Comex] have been segregated and are on file at the . . . [New York regional office of the] CFTC [Commodities Futures Trading Commission] and [are] available for immediate reproduction.[15]

---

**12.** *See Schertenlieb v. Traum,* 589 F.2d 1156, 1165 (2d Cir. 1978) (when plaintiff directed the lifting of an attachment in Switzerland, the testimony of New York lawyers involved in the American litigation in which the attachment was secured was irrelevant).

**13.** *Oil & Gas Ventures—First 1958 Fund, Ltd. v. Kung,* 250 F.Supp. 744, 756 (S.D.N.Y.1966) (in a fraud case, "the demeanor of witnesses before the trier of fact, with an opportunity to appraise credibility, may well mean the difference between acceptance and rejection of crucial testimony") (28 U.S.C. § 1404(a) transfer). *See also Schertenlieb v. Traum,* 589 F.2d 1156, 1165 (2d Cir. 1978) (where truth or falsity is the crux of a case, a party is at a serious handicap when deprived of "live" testimony as against letters rogatory).

**14.** *See Schertenlieb v. Traum,* 589 F.2d 1156, 1165 (2d Cir. 1978); *Iberian Tankers Co. v. Terminales Maracaibo, C.A.,* 322 F.Supp. 73, 75 (S.D.N.Y.1971).

**15.** Plaintiff's Brief in Opposition to Motion at 21–22. *See also* Affidavit of Eliot Lauer at ¶ 18.

To the extent that documents located in New York or witnesses located in New York do possess some information relevant to plaintiff's claim, he can obtain the information for use in a Swiss proceeding. *See Rodriguez v. Orion Schiffahrts-Gesellschaft Reith & Co.,* 348 F.Supp. 777, 779 (S.D.N.Y.1972). 28 U.S.C. § 1782 establishes a procedure whereby persons in the United States may be compelled to produce documents or testimony for use in foreign litigation.

The documents, if deemed material by plaintiff, can readily be submitted in the pending Swiss action.

█ In sum, plaintiff's choice of forum imposes an unwarranted and heavy burden on defendants in the light of the expense and inconvenience of transporting parties, other witnesses and documents to New York; the need for translation of records of Banque, principally written in French, Italian and German, already a matter of controversy;[16] the deprivation of the testimony of live witnesses; and the interruption of daily ongoing activities of a banking institution in the absence of top executive officers named as defendants herein if the trial were to be conducted here. Notwithstanding the overwhelming force of the factors favoring dismissal of this action, Fustok presses the presumption in favor of a plaintiff's choice of forum; however, that presumption is less weighty when plaintiff is a foreigner.[17] In this instance, it is more than rebutted where the balance of the private interest factors is so heavily weighted in favor of a forum in Switzerland. Moreover, plaintiff does not offer a single compelling reason regarding his own convenience to support his choice of this forum.[18]

To the contrary, the potent factors such as the availability of live witnesses and documentary proof in Switzerland serve his convenience no less than that of Banque and the other defendants. One may question Fustok's insistence upon pursuing his claims in this forum that is foreign to him as well as to other litigants. A suggested answer may be the observation by our Court of Appeals in a somewhat similar situation that this suit is part of a campaign of harassment and vexation to impose time-consuming, heavy and expensive burdens upon the opposing side to force a settlement.[19] It is not without significance that for almost a year before Banque commenced its action in Switzerland, the respective Swiss attorneys representing Fustok and Banque engaged in extensive negotiations but failed to achieve an accommodation following which Banque filed its suit.

Public interest factors also favor dismissal of this action. Since, as previously noted, the pending action in the Swiss court is available to afford full relief to the plaintiff upon all the claims here advanced, the simultaneous maintenance of this action would result in needless duplication and an

**16.** Limited discovery was conducted on the issue of in personam jurisdiction. Three individual defendants were deposed in London, England and a sharp controversy developed as to the proper translation of certain words contained in exhibits.

**17.** In *Piper Aircraft Co. v. Reyno,* —— U.S. —— at ——–——, 102 S.Ct. 252 at 265–266, 70 L.Ed.2d 419 (1981), Justice Marshall stated:

The District Court acknowledged that there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum. It held, however, that the presumption applies with less force when the plaintiff . . . [is] foreign.

The District Court's distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified. In *Koster,* the Court indicated that a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum. . . . When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, how-

ever, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice of forum deserves less deference.

(citations omitted) Justice White, the fourth majority vote in *Piper* (two justices did not participate), did not join the above quoted portion of the opinion in *Piper* because he felt it was unnecessary to reach the question whether the District Court properly applied the *Gilbert* factors. *See also Shields v. Mi Ryung Const. Co.,* 508 F.Supp. 891, 894 (S.D.N.Y.1981).

**18.** Plaintiff states that he owns homes in the United States where he spends "periods of time" each year. However, the defendants state, without challenge, that Fustok's principal connections are with Saudi Arabia, where he is a citizen; with England where he resides and conducts his business; and with Switzerland where he maintains accounts with several banks besides the defendant Banque.

**19.** *Cf. Schertenlieb v. Traum,* 589 F.2d 1156, 1165 (2d Cir. 1978).

utter waste of judicial resources,[20] and would unnecessarily delay litigants whose right to our judicial process is unquestioned.[21] This litigation presents legal and factual issues of substantial complexity, and the sheer volume of papers already submitted on this motion with its projection of numerous issues portends an extensive and time-consuming process which necessarily would delay the normal and orderly progress of other cases involving litigants who are here as a matter of right.

At this early stage of the litigation, a sharp difference of opinion exists between plaintiff's and defendants' legal experts as to Swiss law. Fustok's status as a depositor and his authorization of a discretionary investment trading account entered into in Switzerland obviously bring into play Swiss law with respect to rights and obligations based on those relationships. In connection with these and other matters involving the transactions at issue, Fustok signed some six documents which contained clauses designating Geneva as the forum and Swiss law as applicable in the event of any dispute or litigation between Fustok and Banque. Fustok seeks to disavow the forum designation clauses and in support has submitted an affidavit of a Swiss attorney. Not surprisingly, another Swiss attorney representing Banque, also citing Swiss cases, takes a contrary position. Some issue also appears to be raised, although not as explicitly, as to the choice of law provision contained in those documents. With Swiss legal experts in such sharp dispute as to Swiss law and the holding of Swiss high court rulings, the matter is best left to knowledgeable Swiss jurists. The situation makes particularly appropriate Mr. Justice Jackson's observation in *Gulf Oil* that a case should be tried "in a forum that is at home with the . . . law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." [22] Apart from the dispute on the forum and choice of law issues, there is also controversy as to the scope of the Swiss court's power to compel testimony of witnesses beyond Swiss jurisdiction and to enforce letters rogatory that may be issued by or addressed to Swiss courts.

Finally, plaintiff argues that in any event the principle of *forum non conveniens* is inapplicable since most of his claims charge violations of the Commodity Exchange Act and it is doubtful that the Swiss courts would entertain and determine those claims. He further argues that dismissal would not only deprive him of his federal claims but would be contrary to the public interest since this litigation serves to assist the Commodity Futures Trading Commission in maintaining the integrity of regulated markets under its jurisdiction. A "scheme to cheat and defraud the plaintiff and others by means of actual and fictitious transactions executed and purported to have been executed on the Commodity Exchange Inc." is, if established, a fraud whether grounded on a federal statute or on common law. This is also true of "a conspiracy to cheat and defraud." [23] It is not to be assumed that the Swiss courts will not apply American law if it governs the case.[24] But even if the Swiss courts apply

---

**20.** Cf. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). *See also Schneider v. Sears*, 265 F.Supp. 257, 266–67 (S.D.N.Y.1967) (28 U.S.C. § 1404(a) transfer).

**21.** *Noto v. Cia Secula di Armanento*, 310 F.Supp. 639, 649 (S.D.N.Y.1970).

**22.** *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Schertenlieb v. Traum*, 589 F.2d 1156, 1165 (2d Cir. 1978) (inevitably conflicting expert evidence on numerous questions of Swiss law creates uncertain and time-consuming task of resolving such questions by an American judge unversed in civil law tradition); *Conte v. Flota Mercante Del Estado*, 277 F.2d 664, 667 (2d Cir. 1960).

**23.** Complaint ¶¶ 12, 70.

**24.** *See Canada Malting Co., Ltd. v. Paterson Co., Ltd.*, 285 U.S. 413, 424, 52 S.Ct. 413, 416, 76 L.Ed. 837 (1932) ("If the libelants are entitled to have applied the law of the United States in respect to the liability, the Canadian courts will, it must be assumed, give effect to it.")

Swiss law rather than the Commodity Exchange Act, plaintiff is deprived of no right. The Supreme Court recently held in *Piper Aircraft Co. v. Reyno* that "[t]he possibility of a change in substantive law ordinarily should not be given conclusive or even substantial weight in the *forum non conveniens* inquiry."[25] Plaintiff argues that *Piper* does not apply to this case because it involved a common law tort claim rather than a federal cause of action and directs this Court's attention to *Industrial Investment Development Corp. v. Mitsui & Co.,*[26] where the Fifth Circuit held that a private Sherman Act claim could not be dismissed on the basis of *forum non conveniens. Mitsui,* however, is inapposite for several reasons. First, as the Fifth Circuit itself noted, the Clayton Antitrust Act contains a special venue provision which is a "statutory elimination of judicial discretion concerning where the case should be tried."[27] There is no analogous provision in the Commodity Exchange Act. Moreover, in *Schoenbaum v. Firstbrook,* Judge Friendly stated that *forum non conveniens does* apply to private suits under the Securities Exchange Act of 1934 if "the wrong alleged also constitutes the basis for a cause of action under foreign law."[28] There can be no doubt that the allegations of fraud which are basic to plaintiff's claims are actionable under Swiss law. *Schoenbaum* governs this case rather than *Mitsui* both because it is the law of this Circuit and because it involves the securities laws which are a closer parallel to the Commodity Exchange Act than are the antitrust laws.[29]

■ Apart from precedent, there is a strong policy reason for rejecting plaintiff's argument that *forum non conveniens* does not apply whenever a plaintiff alleges a federal cause of action. If such were the rule, a plaintiff, by the simple device of alleging even a colorable federal claim, could effectively prevent consideration by the court of a *forum non conveniens* dismissal no matter how inconvenient plaintiff's chosen forum and regardless of how burdensome such litigation would be upon our courts and citizens. Such a per se rule would conflict with the hallmarks of the *forum non conveniens* doctrine—namely, its flexibility and the wide discretion which it invests in the trial judge.[30] Thus, in other contexts, courts have consistently rejected per se limitations on the *forum non conveniens* doctrine.[31]

**25.** *Piper Aircraft Co. v. Reyno,* —— U.S. —— at ——–——, 102 S.Ct. 252 at 260–261, 70 L.Ed.2d 419. *See also Alcoa Steamship Co., Inc. v. M/V Nordic Regent,* 654 F.2d 147, 159 (2d Cir. 1981) (*forum non conveniens* dismissal proper even though plaintiff's damages will be limited to $570,000 rather than $8,000,000 under law of Trinidad, the alternative forum); *Fitzgerald v. Texaco,* 521 F.2d 448, 453 (2d Cir. 1975), *cert. denied,* 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976) (District Court has discretion to dismiss under doctrine of *forum non conveniens* even though law applicable in alternative forum may be less favorable to plaintiff's chance of recovery).

**26.** 671 F.2d 876 (5th Cir. 1982).

**27.** 671 F.2d 876 (5th Cir. 1982).

**28.** 405 F.2d 200, 209 n.5, *modified on other grounds,* 405 F.2d 215 (2d Cir. 1968) (*en banc*). *See also Fidenas AG v. Compagnie Internationale, etc.,* 606 F.2d 5, 6 (2d Cir. 1979) (District Court dismissed securities case for lack of subject matter jurisdiction and standing but found defendants' *forum non conveniens* argument "persuasive"). *Cf. Burford v. Sun Oil Co.,* 319 U.S. 315, 317–18, 63 S.Ct. 1098, 1098–1099, 87

L.Ed. 1424 (1943) (federal court may decline to exercise jurisdiction, regardless of "whether its jurisdiction is invoked on the ground of diversity of citizenship or otherwise"). *Burford* affirmed the dismissal of a federal question claim "on substantially *forum non conveniens* grounds." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 505, 67 S.Ct. 839, 841, 91 L.Ed. 1055 (1947).

**29.** *See, e.g., CFTC v. J.S. Love & Ass. Options Ltd.,* 422 F.Supp. 652, 661 (S.D.N.Y.1976) (securities cases used as precedent for a commodities case).

**30.** *See Piper Aircraft Co. v. Reyno,* —— U.S. —— at ——, 102 S.Ct. 252, at 267, 70 L.Ed.2d 419 (1981); *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

**31.** *See Piper Aircraft Co. v. Reyno,* —— U.S. —— at ——–——, 102 S.Ct. 252 at 260–261, 70 L.Ed.2d 419 (1980) (Court of Appeals erred in holding that *forum non conveniens* dismissal was *automatically* barred if it would lead to a change in the applicable law unfavorable to

As far as plaintiff's purported role in serving the public interest by assisting the Commission in the enforcement of the Act, the Court for the purposes of this motion has not considered the charges and countercharges made by the respective parties. But whatever their merits, it is clear that plaintiff, whether directly or indirectly, engaged in highly speculative activities in the silver futures market with transactions running into hundreds of millions of dollars, which activities together with those of others played no small role in the highly publicized collapse of the silver market in 1980. In the circumstance, the plaintiff is hardly an ideal representative of the public interest. That interest will be better served by the Commission and those private litigants who charge violations of the Commodity Exchange Act in actions brought in United States courts as a matter of unquestioned right.

To conclude, dismissal is appropriate here because the balance of convenience weighs heavily in favor of trial in Switzerland. Not only is a Swiss court a more convenient and adequate [32] forum but, in fact, there is presently pending there a litigation involving Banque and Fustok which encompasses the claims here advanced. Defendants' motion is granted.

So ordered.

plaintiff); *Alcoa Steamship Co., Inc. v. M/V Nordic Regent,* 654 F.2d 147, 152, 159 (2d Cir. 1981) (endorsed a "uniform standard for determining *forum non conveniens* motions" in rejecting argument that admiralty nature of action or American citizenship of plaintiff justifies a special rule of *forum non conveniens*). Cf. *Noto v. Cia Secula di Armanento,* 310 F.Supp. 639, 649 (S.D.N.Y.1970) (court may inquire into integrity of plaintiff's alleged claims on *forum non conveniens* motion when defendant is not subject to process in another jurisdiction to prevent plaintiff from evading *forum non conveniens* doctrine).

**32.** Plaintiff argues that Switzerland is an inadequate alternative forum because it does not provide the full range of pretrial discovery available in U.S. courts. The Second Circuit,

however, has already recognized the adequacy of Swiss courts as alternative fora in the context of *forum non conveniens* motions. *See Schertenlieb v. Traum,* 589 F.2d 1156 (2d Cir. 1978). Procedures in foreign courts need not be identical to U.S. procedures as long as the alternative forum is not "wholly devoid of due process." *Alcoa Steamship Co. v. M/V Nordic Regent,* 654 F.2d 152, 159 n.16 (2d Cir. 1981); *Shields v. Mi Ryung Const. Co.,* 508 F.Supp. 891, 895 (S.D.N.Y.1981). *See also Panama Processes, S.A. v. Cities Service Co.,* 500 F.Supp. 787, 800 (S.D.N.Y.1980), *aff'd,* 650 F.2d 408 (2d Cir. 1981) (suit dismissed on *forum non conveniens* grounds despite fact that alternative Brazilian court permitted *no* pretrial discovery).