MINPECO, S.A., Plaintiff,

v.

**CONTICOMMODITY SERVICES, INC., Conticapital Management, Inc., Conticapital Limited, Norton Waltuch, Nelson Bunker Hunt, Lamar Hunt, William Herbert Hunt, International Metals Investment Co., Ltd., Sheik Mohammed Aboud Al–Amoudi, Sheik Ali Bin Mussalem, Naji Robert Nahas, Gilion Financial, Inc., Acli International Commodity Services, Inc., Banque Populaire Suisse, Advicorp Advisory and Financial Corporation, S.A., Mahmoud Fustok, Merrill Lynch, Pierce, Fenner & Smith, Inc., Bache Halsey Stuart Shields, Inc., E.F. Hutton & Company, Inc., Commodity Exchange Inc., The Board of Trade of the City of Chicago, Continental Company, and Walter Goldschmidt, Defendants.**

**No. 81 Civ. 7619 (MEL).**

United States District Court, S.D. New York.

Jan. 6, 1988.

See also, D.C., 677 F.Supp. 151.

Cole & Corette, Washington, D.C., for plaintiff Minpeco, S.A.; Mark A. Cymrot, of counsel.

Curtis, Mallet–Prevost, Colt & Mosle, New York City, for defendant Mahmoud Fustok; Herbert Stoller, Turner P. Smith, of counsel.

Arnold & Porter, Washington, D.C., for defendant Banque Populaire Suisse; Brooksley Born, of counsel.

LASKER, District Judge.

Mahmoud Fustok, a defendant in this civil action alleging a conspiracy to manipulate the price of silver upward, has moved for an order compelling Banque Populaire Suisse ("BPS"), a settling defendant, to produce certain documents, disclosure of which would violate Swiss bank secrecy laws. Fustok seeks from BPS documents and information relating to Naji Robert Nahas, Advicorp Advisory and Financial Corporation, S.A. ("Advicorp") (both defendants in this action), the Advicorp principals—Bally, Hirschy, and Asfour—and the silver transactions they directed.

Fustok contends that the documents are necessary to his defense to show that he was cheated and defrauded by BPS, with the aid of Advicorp and Nahas, and that he was not a coconspirator with them. BPS argues that Fustok's request for documents is even less compelling than that of the plaintiffs in *Minpeco, S.A. v. Conti-Commodity Services, Inc. et al.*, 116 F.R.D. 517 (S.D.N.Y.1987) (*"Minpeco"*), which was denied, particularly because the information sought is not directly relevant to this case.

Fustok originally moved for an order compelling BPS to produce documents on November 11, 1986.[1] Consideration of Fustok's motion was deferred pending decision on a similar motion by Minpeco and the plaintiff classes in *Gordon v. Hunt et al.,*

No. 82 Civ. 1318 (MEL) and *Korwek v. Hunt et al.*, No. 84 Civ. 7934 (MEL). Familiarity with that decision, *Minpeco*, is assumed.

As stated in *Minpeco*, the principal factors affecting the decision whether to direct production where the production would violate the law of the country in which the documents are located are:

(1) the competing interests of the nations whose laws are in conflict, (2) the hardship of compliance on the party or witness from whom discovery is sought, (3) the importance to the litigation of the information and documents requested, and (4) the good faith of the party resisting discovery.

116 F.R.D. at 523.[2] In this case, only the third factor, the requesting party's need for the documents, weighs more heavily in favor of granting Fustok's request than was true of the balance in *Minpeco*. The other factors weigh in the balance as they did in *Minpeco*. Nevertheless, in spite of Fustok's respectable showing that these documents might strengthen his defense, his motion is denied for the following three reasons: 1) the penalties which may be imposed on BPS' employees who complied with an order of this court that required production in violation of the laws of Switzerland are potentially draconian, 2) an order compelling production should be imposed on a nonparty such as BPS only in extreme circumstances, and 3) the argument against such an order is strongest where, as here, the very parties (i.e., Fustok and BPS) are locked in litigation in Switzerland in which the documents requested in this motion are directly relevant and thus production, if ordered at all, should be compelled by the Swiss courts. *Cf. Fustok v. Banque Populaire Suisse,*

---

1. BPS argues that Fustok's motion is untimely, his request to rebrief his earlier motion having been denied by Magistrate Gershon on June 17, 1987. However, as Fustok points out, after Minpeco's motion was decided, this court agreed that Fustok could brief his motion for an order to compel production. Transcript of Hearing at 2–3 (July 8, 1987).

2. The factors mentioned in Section 40 of the Restatement (Second) of the Foreign Relations Law of the United States (1965) also include 1) the extent to which the required conduct is to take place in the territory of the other state, 2) the nationality of the person, and 3) the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state. Although cited in *Minpeco*, 116 F.R.D. at 522, these are not among the principal factors affecting either the decision in *Minpeco* or in the case at hand.

546 F.Supp. 506 (S.D.N.Y.1982) (dismissing Fustok's action in United States court charging BPS and others with having defrauded him in connection with silver transactions on forum non conveniens grounds and holding that Switzerland was the proper forum).

## DISCUSSION

### A. NATIONAL INTERESTS

As was true in *Minpeco*, both the United States and Switzerland have strong national interests at stake. The United States has a substantial interest in ensuring parties a full and fair adjudication of their case. *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 30 (S.D.N.Y. 1984). Although Fustok is not a citizen of the United States, there is a national interest in enabling him to prepare as thorough a defense as he can to an action in a United States court.

There are three indications that the Swiss national interest, which is embodied in its bank secrecy laws[3] and identical to that in *Minpeco*, is substantial. *See generally Minpeco*, 116 F.R.D. at 524-25. First, disclosure of customer information is prohibited by criminal law, thereby indicating a stronger national interest than if the enforcement were left solely to private litigation. Second, the purpose of the bank secrecy laws is to protect commercial privacy in and out of Switzerland; the laws are not intended merely to block discovery. Third, the Swiss government submitted statements in *Minpeco* (i.e., this very case, although on a different motion) expressing its position as to the importance of the bank secrecy laws to Switzerland and its opposition to actions by U.S. courts seeking to compel disclosure of information protected by those laws, statements that are suffi-

ciently general so as to apply to this motion as well. *Cf. SEC v. Banca Della Svizzera Italiana*, 92 F.R.D. 111, 111-18 (S.D.N.Y. 1981) (emphasizing the Swiss government's failure to express opposition to discovery in context of ordering production). However, the two considerations that cut against the Swiss national interest in *Minpeco* apply in this proceeding as well. First, although the bank secrecy privilege is codified in a criminal statute, it is a personal privilege that can be waived by a bank customer, suggesting that the customer's interest, not that of the country or a public institution, is the intended beneficiary of the law. Second, to the extent that the Commodity Exchange Act ("CEA") and Commodities Futures Trading Commission ("CFTC") regulations require BPS, as a trader in the U.S. futures market, to report certain information sought by Fustok, Swiss national interests are not burdened.

### B. HARDSHIP IMPOSED BY COMPLIANCE

The hardship that could confront BPS were it to comply with an order is virtually identical to that discussed in *Minpeco*. *See generally Minpeco*, 116 F.R.D. at 525-27. First, it must be noted that "the hardship which might be imposed on BPS now could have been avoided to some extent had it obtained waivers of Swiss secrecy from its brokerage customers prior to trading for their accounts, as the CFTC has determined it was obligated to do." *Id.* at 527. Nevertheless, the potential hardship that could be imposed on BPS is significant and weighs against issuance of an order compelling production. If BPS employees, in response to Fustok's request, disclose information protected by Article 47, they could be subject to criminal prosecution.[4]

---

**3.** Should BPS disclose information about the customer's identity or banking relationship, BPS and/or its employees could be subject to: 1) imprisonment or a fine, with either the public prosecutor or an aggrieved customer able to initiate the action, 2) administrative sanctions, including possible revocation of BPS' authority to conduct business, and 3) civil tort suits. *Minpeco*, 116 F.R.D. at 524-25.

**4.** Fustok maintains that the possibility of actions against BPS by Nahas, Bally, Hirschy, or Asfour is remote. However, absent support for this assertion, the possibility of prosecution remains a factor in the decision. Memorandum in Support of Fustok's Renewed Motion to Compel BPS to Produce Documents and Information Withheld on Swiss Secrecy Grounds at 25 (September 15, 1987) ("Memorandum").

The likelihood of a successful defense to such a prosecution—based on either the Swiss doctrine of "state of necessity" or "justifying facts"—seems every bit as speculative here as in *Minpeco*. Moreover, as in that decision, BPS' status as a non-party witness in this case weighs heavily against granting the instant motion.[5] In fact,

> it has been suggested that the factor which distinguished the early Second Circuit cases adopting a restrictive approach to ordering discovery in the face of foreign nondisclosure laws was the fact that they all involved a nonparty witness.

*Id.* at 527 (citing *SEC v. Banca Della Svizzera Italiana*, 92 F.R.D. 111, 114 (S.D.N.Y.1981)).

### C. FUSTOK'S NEED FOR DOCUMENTS

Fustok contends that information concerning Nahas, Advicorp, and the Advicorp principals and the silver transactions they directed is essential for his defense in order to show that he did not enter into an agreement with other alleged coconspirators to manipulate the price of silver, but was instead cheated by them. As BPS argues, any evidence that BPS cheated and defrauded Fustok is relevant to the action in Switzerland between these very parties in which Fustok charges BPS with having defrauded him[6] and not as a defense to the charge of conspiracy in this case,[7] *see Minpeco, S.A. v. ContiCommodity Service, Inc. et al.*, 673 F.Supp. 684, 695 (S.D.N.Y. 1987) ("*Minpeco II*") (dismissing Fustok's motion for summary judgment and holding

that his allegations "that he was defrauded or cheated by some of the alleged conspirators, would not, even if proven, constitute a defense against Minpeco's charges").

However, it cannot be said that all of the documents Fustok seeks are irrelevant. Although Fustok characterizes the information as necessary to show that he was cheated, one example that he provides—that he claims that the documents will show that a purchase of 1,750,000 ounces of silver in January 1980 was made for another BPS customer, not Fustok, and that the purchase was only retroactively assigned to Fustok at a $30 million loss[8]—might be probative of whether he or his authorized agent approved all transactions credited to his account. To the extent Minpeco might ask the jury at trial to infer from parallel conduct and uneconomical behavior that Fustok and others conspired to manipulate the price of silver and because much of the evidence of the conspiracy is circumstantial, evidence that the silver was not purchased for Fustok might be relevant to his defense.[9] *See Minpeco II.*

However, several observations are in order. First, it cannot be said, as was true of plaintiffs' request on the previous motion, that "the information plaintiffs seek is highly relevant." *Minpeco* at 527. Only some of the information Fustok seeks might be relevant to this case. Second, it is significant that much of the information Fustok seeks, indicating that he was cheated, is relevant only to his action in Switzerland. Therefore, the Swiss courts, if any court is to do so, should order production. *Cf. Fus-*

---

5. As a result of its settlement with Minpeco and a decision of this court granting BPS' motion to dismiss Fustok's cross-claims, BPS is no longer a party in this case.

6. Based on the discussion of Fustok's charge in *Fustok v. Banque Populaire Suisse*, 546 F.Supp. 506 (S.D.N.Y.1982), it appears that Fustok's allegations of fraud in that case were very similar, if not identical, to the fraud he contends would be shown by the documents requested in this motion.

7. Fustok only argues that this information is relevant for his defense, not for his cross-claims.

8. Fustok's principal claim in his action charging BPS with having defrauded him centered on this very transaction. *Fustok v. Banque Populaire Suisse*, 546 F.Supp. 506, 509–10 (S.D.N.Y. 1982).

9. Information indicating whether Fustok authorized a particular transaction may be of increased importance given this court's holding in *Minpeco, S.A. v. ContiCommodity Services, Inc., et al.*, 677 F.Supp. 151, 158–160 (S.D.N.Y.1987) that Minpeco's representation and warranty, relied on to dismiss Fustok's cross-claims against BPS, precludes Minpeco from seeking to hold Fustok liable solely for the acts of others.

*tok v. Banque Populaire Suisse,* 546 F.Supp. 506, 515 n. 32 (S.D.N.Y.1982) (rejecting Fustok's argument that, because Switzerland's pretrial discovery is not as extensive as that of the United States, Switzerland is not an adequate alternate forum for his action charging BPS with having defrauded him).

## D. GOOD FAITH OF RESISTING PARTY

BPS' prelitigation conduct, while not rising to the level of bad faith, "may be viewed as having 'courted legal impediments to production [of the requested documents and information],'" *Minpeco* at 528, quoting *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 209, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958). Prior to litigation, BPS 1) engaged in transactions on the United States silver market without securing secrecy waivers from its customers, as necessary for CEA reporting requirements and 2) granted Advicorp an exception to BPS' internal policies that required its customers, prior to trading on U.S. markets, to execute bank secrecy waivers. Nevertheless, it cannot be said that BPS has not made a good faith effort to respond to discovery requests.[10] As was true in *Minpeco,* BPS has attempted to secure waivers of bank secrecy from its customers, it has produced volumes of documents,[11] and it has not relied on a sham law to refuse disclosure.

## CONCLUSION

In sum, the balance weighs against Fustok's request. First, both the United States and Switzerland have strong national interests at stake, the Swiss interest reflected not only in the Swiss secrecy laws but also—a factor of significance—in official statements of the Swiss government. Second, if ordered to produce the documents sought by Fustok, relating to parties who have not waived their rights to secrecy, BPS employees would be in violation of Swiss law, with little likelihood of asserting a successful defense. Moreover, less justification for imposing on BPS employees exposure to potentially heavy penalties exists where, as here, BPS is a nonparty witness, a status which, although not an absolute bar to an order compelling discovery, cautions against an exercise of the court's discretion requiring production absent unusual circumstances. Third, despite the apparent relevance of some of the information requested, much of the material is not probative of the question presented in this case, namely whether Fustok conspired to manipulate the silver market. Instead, the information in large part, based on Fustok's own characterization of what it may prove, is important only to the litigation in Switzerland between these parties. If any court is going to order BPS to produce these documents, it should be a Swiss court. Given the limited number of documents sought that are relevant to this case, it seems that even Fustok's need for the documents, the factor weighing most heavily in his favor, is outweighed by the costs in international comity should BPS confront a compliance order from this court. Finally, Fustok has not shown that BPS' responses to his discovery requests were not made in good faith, despite the fact that BPS, by its earlier conduct, "can be said to have placed itself in harm's way." *Id.* at 529.

The motion is denied.

It is so ordered.

10. Fustok alleges that BPS has acted in bad faith during the course of this litigation by 1) objecting to discovery requests on grounds that were overruled, 2) raising Swiss secrecy laws as a bar to disclosure inconsistently, 3) failing to produce certain documents in this action that have been disclosed in Fustok's Swiss action, and 4) responding to discovery requests in such a way as to create discovery impediments. Although these allegations, if proven, could support a finding of bad faith, Fustok does not present sufficient evidence or develop these allegations adequately.

11. BPS has already disclosed materials concerning Fustok's account; the Banque itself; Advicorp and its officers—Bally, Hirschy and Asfour; the Hunt brothers and IMIC; and the accounts of Banque customers who have waived their Swiss secrecy rights.