Harold V. **FOGEL** et al., Plaintiffs,

v.

Jacques **WOLFGANG** et al., Defendants.

No. 67 Civ. 1629.

United States District Court
S. D. New York, C. D.

Aug. 28, 1969.

See also, D.C., 47 F.R.D. 213.

Kaufman, Taylor, Kimmel & Miller, New York City, for plaintiffs.

Weil, Gotshal & Manges, New York City, for defendants other than A. T. Colwell and Jacques Wolfgang. Trenkamp, Brown & Douglas, Cleveland, Ohio, of counsel.

Alexander & Green, New York City, for defendant A. T. Colwell.

Sylvester, Harris & Burstein, New York City, for defendant Jacques Wolfgang.

LASKER, District Judge.

This is a motion pursuant to 28 U.S.C. § 1404(a) to transfer this class action to the Northern District of Ohio, Eastern Division. In a complaint filed in April 1967, plaintiffs allege a violation of Section 10(b) of the Securities Exchange Act of 1834 [1] and Rule 10b–5 [2] promul-

1. 15 U.S.C. § 78j(b).

2. 17 C.F.R. § 240. 10b–5.

3. This action was declared to be a class action pursuant to Rule 23 F.R.Civ.P. by order of Judge Tyler in May 1969.

gated thereunder. Jurisdiction is based upon Section 27 of that Act.

Plaintiffs are New York residents and represent the class of shareholders [3] of Rand Development Corporation stock who purchased said securities between July 13, 1966 and January 20, 1967. Defendant Rand Development Corporation (hereinafter "Rand") is an Ohio corporation with its principal place of business in Cleveland.[4] It is engaged in the research and development business. The individual defendants were directors or officers of Rand during the relevant period. The complaint alleges that the defendants manipulated and inflated the price of Rand's stock during the period July 13, 1966 to January 20, 1967, by widely publicizing the fact that Rand had developed an effective cancer vaccine, as well as a reliable test for the detection of cancer, when they knew this to be in fact untrue. During the period in question, the market price of Rand stock rose from $6.00 per share to more than $50.00 per share. Plaintiffs further allege that during the period of the rise of Rand stock the officers and directors of Rand were selling large amounts of the stock and consequently realizing extraordinary profits. Rand issued a clarifying statement in compliance with a request from the Securities and Exchange Commission, and subsequently the market price of Rand stock fell back to the $7.00 to $8.00 range.

28 U.S.C. § 1404(a) provides that:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The instant motion, brought under this section, thus raises two basic issues: first, whether the Northern District of

4. The City of Cleveland is within the Northern District of Ohio.

Ohio, Eastern Division, is a district where the action "might have been brought"; and second, whether the convenience of parties and witnesses and the interest of justice would best be served by a transfer to that district.

## I. WHERE THE ACTION MIGHT HAVE BEEN BROUGHT

There can be no doubt that the Northern District of Ohio is a district where this action "might have been brought." Van Dusen v. Barrack, 376 U.S. 612, 616ff, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). As the court states in Wyndham Associates v. Bintliff, 398 F.2d 614, 620 (2d Cir., 1968):

> "Section 27 of the Securities Exchange Act provides that suit to enforce liabilities under the Act or any rule or regulation thereunder may be brought in any district wherein any act or transaction constituting the violation occurred."

See also Rothenberg v. Silberman, 278 F. Supp. 116 (S.D.N.Y., 1968); and Peyser v. Meehan Fund, Inc., 264 F.Supp. 1 (S. D.N.Y., 1966).

The allegations in the complaint necessarily place at least some of the "act[s] or transaction[s] constituting the violation" in the Northern District of Ohio. It should be noted that all of the named defendants need not have committed an act or transaction in the Northern District of Ohio in order for venue to be placed properly in that district as to them. It is enough "if there occurred in that district 'any act or transaction' by any defendant in furtherance of a manipulative scheme in which [the specific defendant] knowingly participated." Wyndham Associates v. Bintliff, supra, 398 F.2d at 620. There the court further stated:

> "In this case the alleged acts by other defendants in Texas are sufficient to satisfy this venue requirement."

Accordingly, the action "might have been brought" in the Northern District of Ohio as to all of the named defendants.

## II. THE CONVENIENCE OF PARTIES AND WITNESSES AND THE INTEREST OF JUSTICE

Criteria under Section 1404(a) as to the convenience of witnesses and the interest of justice are broader than those applicable under the older doctrine of forum non conveniens. Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955). The determinative factors were summarized in United States v. General Motors Corp., 183 F. Supp. 858, 860 (S.D.N.Y., 1960):

> "The principal desiderata are: relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; cost of obtaining attendance of witnesses; possibility of a view, if appropriate; and all other practical problems that would make the trial of a case easy, expeditious and inexpensive. In appraising the factors of public interest, it is also appropriate to give some consideration to the relative state of trial calendar congestion in the districts involved."

The cases generally accord substantial weight to the plaintiff's choice of forum. Zorn v. Anderson, 263 F.Supp. 745, 749 (S.D.N.Y., 1966); Oil and Gas Ventures v. Kung, 250 F.Supp. 744 (S.D. N.Y., 1966). In the latter case, the court remarked (at 754) that under Section 1404(a) "the plaintiff's choice of forum, formerly 'rarely [to] be disturbed,' is now of diminished significance, although it is still to be considered." As the Supreme Court stated in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947):

> " * * * unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."

A presumption in favor of the plaintiff's choice of forum is not so rigidly applied, however, in the case of derivative suits on behalf of a corporation. The Supreme Court, referring to a stockholder's derivative action, stated in Koster v. Lumbermen's Mut. Casualty Co., 330 U.S. 518, 524, 67 S.Ct. 828, 832, 91 L.Ed. 1067 (1947):

> " * * * where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."

See also Schlusselberg v. Werly, 274 F. Supp. 758, 763 (S.D.N.Y., 1967); Miller v. Steinbach, 268 F.Supp. 255, 283 (S.D.N.Y., 1967); Gold v. Scurlock, 290 F. Supp. 926 (S.D.N.Y., 1968). The *Koster* rationale has been held to be applicable to class actions as well as to derivative suits. Schneider v. Sears, 265 F.Supp. 257, 266 (S.D.N.Y., 1967). The court there recognized that in a class action, "any stockholder in the affected class who subsequently chooses to appear might be faced with similar inconveniences, depending upon where the actions proceed." [5] In this regard, defendants point out that 855 stockholders of record purchased Rand stock during the relevant period, and of this number 603 (or 68 percent) reside within the jurisdiction of the Northern District of Ohio, while only 24 stockholders of record (less than 3 percent) reside within the jurisdiction of the Southern District of New York. The concentration is further demonstrated by the fact that more than 58 percent of these stockholders of record were residents of two counties in Ohio.[6] This stockholder concentration warrants the attribution of substantially decreased importance to plaintiff's choice of forum. See Saperstone v. Kapelow, 279 F.Supp. 781, 783 (S.D.N.Y., 1968); Levin v. Mississippi River Corp., 289 F. Supp. 353, 359 (S.D.N.Y., 1968).

■■ Of course, the movants have the burden of proof that a transfer would be "for the convenience of parties and witnesses, in the interest of justice." Ford Motor Co. v. Ryan, 182 F.2d 329, 330 (2d Cir., 1950); Rosette v. Crown Record Co., 266 F.Supp. 393, 396 (S.D.N.Y., 1965). We hold that the movants have successfully met that burden. Aside from the concentration of stockholders in Ohio, the operative factors which plaintiffs allege constitute a violation of Section 10 (b) and Rule 10b–5 were centered in the Northern District of Ohio. The complaint alleges that the cancer vaccine and test developed by Rand were ineffective, that defendants knew of the lack of efficacy when they released public reports to the contrary, and that the market price of Rand stock was unduly inflated as a consequence. On the issue of efficacy of the vaccine and test, and the actual knowledge that defendants possessed at that time, the proofs appear to be more accessible and convenient to a trial court sitting in the Northern District of Ohio, Eastern Division, than in the Southern District of New York. Defendants contemplate offering proof as to the development of experimentation with, and clinical testing of, the vaccine and diagnostic test. Since Rand's cancer research program commenced in 1957 and was conducted in the Cleveland area, the personnel who conducted the research, as well as records for approximately ten years, are to be found within the proposed transferee district. It further appears that the acts relating to preparation and dissemination of the allegedly false and misleading releases to the public

---

5. Ibid, at 263.

6. For purposes of this motion, this data will be used. Plaintiffs have submitted a list of various New York brokerage houses which purchased Rand stock in a "street name," but this list did not reveal the location or number of beneficial owners of Rand stock.

also centered within the proposed transferee district. Favorable reports regarding the efficacy of the vaccine and test were released to reporters of and circulated by Cleveland newspapers, as well as the 1966 Annual Report to Rand stockholders, which was disseminated from Cleveland.

Plaintiffs point to various transactions which took place outside of the Northern District of Ohio, such as a Connecticut interview with a reporter from a nationally distributed magazine, and discussions with a New York underwriter relating to a proposed issue of securities. The mere fact that some sources of proof are in this district should not preclude transfer. A. Olinick and Sons v. Dempster Bros., 365 F.2d 439, 445 (2d Cir., 1966). We hold that the Northern District of Ohio has a greater connection with the issues raised by the pleadings than does this district.

A consideration of the convenience of witnesses in this lawsuit clearly militates in favor of transfer. For purposes of a Section 1404(a) motion, a determination of the location of the majority of material witnesses is of significant importance. Gallen v. Howard D. Johnson Co., 271 F.Supp. 680 (S.D.N.Y., 1967). As the court stated in Anthony v. RKO Radio Pictures, Inc., 103 F.Supp. 56, 57 (S.D.N.Y., 1951):

> "In the determination of the question whether a transfer shall be ordered, a factor of considerable importance is the number of witnesses each party is likely to call who are capable of testifying as to determinative issues in the case."

Defendants have submitted a list of proposed witnesses and a description of their proposed testimony. It reveals that a substantial number of proposed witnesses, who will testify as to material issues, reside within the Northern District of Ohio. A number of these witnesses are not under the control of defendants and not subject to the subpoena power of this court. Their attendance at a trial in this forum is uncertain. As the Supreme Court stated in Gulf Oil Corp. v. Gilbert, supra, 330 U.S. at 511, 67 S.Ct. at 844:

> "Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants."

See also Securities and Exchange Commission v. Frank, 388 F.2d 486, 491 (2d Cir., 1968); Axe-Houghton Fund A, Inc. v. Atlantic Research Corp., 227 F.Supp. 521, 524 (S.D.N.Y., 1964).

The disadvantages of trial by deposition are particularly apparent in a case such as the present one, where plaintiffs have alleged that defendants knew certain information to be false when they released contrary reports to the public. As the court stated in Oil and Gas Ventures v. Kung, supra, 250 F.Supp. at 756:

> "The importance of live witnesses at a trial revolving about charges of fraudulent conduct is evident. The demeanor of witnesses before the trier of the fact, with an opportunity to appraise credibility, may well mean the difference between acceptance and rejection of crucial testimony."

It thus appears that the defendants may be severely prejudiced if they are forced to offer certain crucial testimony by deposition. On the other hand, the testimony of the few plaintiffs who reside in this forum will, by the nature of the case, be fundamentally mechanical. As the court said in Schneider v. Sears, supra, 265 F.Supp. at 263:

> " * * * testimony offered by these or other plaintiffs is likely to be minimal, probably no more than a recitation of the circumstances under which they purchased their stock. The critical evidence, testimonial and documentary, to sustain the claims must come from other sources."

Plaintiffs state that a physician in New York clinically tested the vaccine, but there were many more physicians resident in the Northern District of Ohio who were involved in the testing procedure.

All or some of the named defendants may be called to testify at trial, and of this group four are residents of the Northern District of Ohio, while only one resides within the Southern District of New York. If all individual defendants were to attend trial in this district, Rand's business may be seriously interrupted, since it is a relatively small corporation. Ruskay v. Reed, 225 F.Supp. 581, 583 (S.D.N.Y., 1963). Furthermore, Rand stock trades over-the-counter, and brokerage houses located in Cleveland make the primary market for these securities. If testimony is sought regarding the effect of the public announcements on the market price of Rand stock, the Northern District of Ohio will certainly be more convenient for these witnesses. As in almost any motion for transfer, there will, of course, be some witnesses who are inconvenienced. However, here, the Northern District of Ohio is the forum which will cause the least inconvenience to the greatest number of material witnesses.

An added factor of some import in a Section 1404(a) motion is the matter of the "relative state of trial calendar congestion in the districts involved." United States v. General Motors Corp., supra, 183 F.Supp. at 860. The clerk of the court of the Northern District of Ohio has advised this court, upon inquiry, that a case generally comes to trial in that district about one year after transfer. Since a pre-trial order has not yet been signed here, the case will not reach trial in this district in less than one year.

In the light of the foregoing, it is evident that the convenience of the parties and witnesses and the interest of justice will be furthered by transferring this action to the Northern District of Ohio. Accordingly, the motion is granted.

It is so ordered.